UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMERICAN COMMERCE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 10-CV-0036-CVE-FHM |
| BRANDON FEW, CRYSTAL FEW, and SAVANNAH HADDOCK and CLIFTON HADDOCK, as parents and next friends of W.H., a minor child, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is American Commerce Insurance Company's Motion for Summary Judgment and Brief in Support (Dkt. # 15) and Savannah Haddock and Clifton Haddock's counter-motion for summary judgment (Dkt. # 25).[1] Plaintiff American Commerce Insurance Company (ACIC) filed this declaratory judgment action seeking a declaration that the policy issued by ACIC to Brandon Few and Crystal Few (together, the Fews) affords no coverage for certain claims asserted by Savannah Haddock and Clifton Haddock (together, the Haddocks) against Crystal Few, and that ACIC has no duty to indemnify or defend Crystal Few against such claims. See Dkt. # 2. ACIC seeks summary judgment on the ground that the insurance policy excludes coverage of the Haddocks' claims against Crystal Few.

---

[1] Savannah Haddock and Clifton Haddock submitted a document titled "Defendant's [sic] Response to Plaintiff's Motion for Summary Judgment [Dkt 15] and Counter-Motion for Summary Judgment." Dkt. # 24. "A response to a motion may not also include a motion or cross-motion made by the responding party." LCvR7.2(e).

**I.**

ACIC is an Ohio corporation with its principal place of business in Ohio. Dkt. # 2, at 1. The Fews and Haddocks are residents of Oklahoma. Dkt. # 13, at 1. The Haddocks filed a petition in state court on September 30, 2009, naming Crystal Few as defendant. Dkt. # 15-3, at 1. The Haddocks allege that they contracted with Crystal Few to provide childcare services for their son, W.H., at Crystal Few's residence. Id. at 2. They allege that Crystal Few "provided childcare services to the Haddocks and other members of the community during work hours, Monday through Friday, for $100 per week." Id. On November 7, 2008, Savannah Haddock "received a suspicious text message from [Crystal Few], wherein [Crystal Few] inquired whether [Savannah Haddock] would be picking up the child at a time other than the normal time." Id. When she arrived at Crystal Few's residence, Savannah Haddock was advised "that the child had been crying for several hours." Id. The Haddocks took W.H. to the emergency room that day, where he was diagnosed with a torsion fracture to his left arm. Id. The Haddocks brought claims for negligence, negligence per se, and assault and battery against Crystal Few. Id. at 2-4. The petition states that "as a provider of childcare, [Crystal Few] owed a duty and standard of care" to W.H. Id. at 2.

ACIC issued a homeowners insurance policy, No. 61 001355399, to the Fews (hereinafter, the Policy). Dkt. # 15-2, at 1. The Policy coverage period is December 16, 2007 through December 16, 2008. Id. The Policy provides liability coverage for "sums for which an 'insured' is liable by law because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies. 'We' will defend a suit seeking damages if the suit resulted from 'bodily injury' or 'property damage' not excluded under this coverage. It also covers "the necessary medical expenses if they are incurred or medically determined within three years from the date of an accident

2

causing 'bodily injury' covered by this policy. . . . This applies only to . . . a person on the 'insured premises' with the permission of an 'insured' . . . ." Dkt. # 15-2, at 16. Bodily injury is defined as "bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services." Id. at 6. It "does not mean bodily harm, sickness, disease, or death that arises out of . . . physical abuse . . . ." Id. An occurrence is "an accident . . . that results in 'bodily injury' or 'property damage' during the policy period." Id. at 7.

The Policy contains several exclusions. Liability and bodily injury coverage do not apply to "'bodily injury' . . . resulting from activities related to the 'business' of an 'insured,' except as provided by Incidental Business Coverage." Id. at 19-20. "'Business' means a trade, a profession, or an occupation including farming, whether full or part time. . . . 'Business' includes services regularly provided by an 'insured' for the care of others and for which an 'insured' is compensated. A mutual exchange of like services is not considered compensation." Id. at 6. "Business" does not include "activities that are related to 'business' but are usually not viewed as 'business' in nature." Id.

Medical payments to others coverage does not apply to bodily injury to "a person who is on the 'insured premises' because a 'business' is conducted or professional services are rendered on the 'insured premises.'" Id. at 20.

The "Punitive Damage Exclusion" rider states:

> this policy does not apply to a claim or indemnification for punitive or exemplary damages. If a suit seeking both compensatory and punitive or exemplary damages is brought against an 'insured' for an 'occurrence' covered by this policy, 'we' will provide defense coverage.
>
> We will not pay for any costs, interest, or damages attributable to punitive or exemplary damages.

3

Id. at 38.

Crystal Few made a claim with ACIC for defense and indemnity against the Haddocks' suit, and ACIC is currently defending Crystal Few under a reservation of rights. See Dkt. # 2-4. To date, the Fews have failed to answer or otherwise defend in the instant matter, and the Court Clerk entered their default on May 5, 2010. Dkt. # 20. This Court granted plaintiff's application for default judgment against the Fews on June 23, 2010. Dkt. # 29.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

4

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

A.   Jurisdiction

Jurisdiction in this case is founded upon diversity of citizenship, which requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332. The parties are completely diverse because ACIC's state of citizenship is different from the Haddocks' and Fews'. The Haddocks suggest that this Court lacks jurisdiction over this action because "it is not likely that the amount of [the Haddocks'] claim [against Crystal Few] exclusive of punitive damages will reach the jurisdictional limits." Dkt. # 24, at 12. They state that W.H.'s medical expenses were $10,399.40. Dkt. # 24-2, at 2. "When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover" the jurisdictional amount. Woodmen of World Life Ins. Soc. v. Manganaro, 342 F.3d 1213, 1217 (10th Cir. 2003) (quoting Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994)). In other words, to prevail, ACIC must demonstrate that it is not legally certain that $75,000 or less is at issue in this case. See id

The fact that the Haddocks' recovery might be limited to $10,399.40 does not deprive the Court of jurisdiction over this case. ACIC seeks a declaration that it has no duty to indemnify or

5

<u>defend</u> the Fews against the Haddocks' claims. It is legally possible that the costs of defending the Fews could exceed $64,600.61. Further, ACIC anticipates incurring attorney fees and costs of between $65,000 and $70,000 in defending Crystal Few. Dkt. # 28-2, at 2. Therefore, the Court has diversity jurisdiction in this case.[2]

B.      <u>Policy Coverage</u>

ACIC argues that the Policy does not cover claims for damages incurred by a third party resulting from a business conducted by the insured on the covered premises. Dkt. # 15, at 5-6. "The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." <u>Houston Gen. Ins. Co. v. Am. Fence Co., Inc.</u>, 115 F.3d 805, 806 (10th Cir. 1997) (applying Oklahoma insurance law). In Oklahoma, interpretation of an insurance contract is a matter of law. <u>Max True Plastering Co. v. U.S. Fid. and Guar. Co.</u>, 912 P.2d 861, 869 (Okla. 1996). The insured has the burden of showing that his or her claim is covered under the policy. <u>See U.S. Fid. and Guar. Co. v. Briscoe</u>, 239 P.2d 754, 756 (Okla. 1952) (noting that "the contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon); <u>see also</u> <u>Pitman v. Blue Cross and Blue Shield of Okla.</u>, 217 F.3d 1291, 1298 (10th Cir. 2000) ("the insured has the burden of showing that a covered loss has occurred"). Once the insured establishes coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." <u>Pitman</u>, 217 F.3d at 1298. Therefore, summary judgment in favor of the insurer is

---

[2] In a footnote in its reply brief in support of its motion for summary judgment, ACIC suggests that "the Haddocks' standing to maintain claims regarding coverage on behalf of the Few Defendants is questionable." Dkt. # 28, at 2 n.1. ACIC has not raised a standing issue which would deprive this Court of jurisdiction; "standing" to raise an argument in defense of a jurisdictionally proper declaratory judgment action is not the same thing as standing to bring a claim in the constitutional sense.

proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy. See, e.g., VBF, Inc. v. Chubb Group of Ins. Cos., 263 F.3d 1226 (10th Cir. 2001) (affirming the district court's grant of summary judgment to the insurers where the undisputed facts established that, under Oklahoma law, the insured's claims were not covered).

In interpreting the Policy, this Court applies the Oklahoma rules of construction. See id. at 1230. Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). Ambiguities in an insurance contract are construed against the insurer. Max True, 912 P.2d at 865. A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it can be interpreted as having two different meanings. Equity Ins. Co. v. City of Jenks, 184 P.3d 541, 544 (Okla. 2008); Osprey L.L.C. v. Kelly-Moore Paint Co., 984 P.2d 194, 199 (Okla. 1999). However, the Oklahoma courts "will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered," and neither a "split in authority over whether a certain term is ambiguous," nor "the fact that the parties disagree" alone is sufficient to establish an ambiguity. BP Amer., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835-36 (Okla. 2005).

"The general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 377 (Okla. 1991). Any exclusions to general coverage:

> are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage. In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.

Id. (footnotes omitted).

ACIC argues that the Policy does not cover the Haddocks' claims because they are for bodily injury that resulted from activities relating to the business of an insured. The Haddocks argue that Crystal Few's childcare activities were not a business. They further argue that caring for children alongside one's own child is an activity "not usually viewed as 'business' in nature." A business is defined as "a trade, a profession, or an occupation including farming, whether full or part time. . . . 'Business' includes services regularly provided by an 'insured' for the care of others and for which an 'insured' is compensated. A mutual exchange of like services is not considered compensation." Dkt. # 15-2, at 6. "Business" does not include "activities that are related to 'business' but are usually not viewed as 'business' in nature." Dkt. # 15-2, at 6.

It is undisputed that Crystal Few regularly provided child care for the Haddocks and others and received compensation for such service. The Haddocks' attempt to characterize the $100 per week they paid to Crystal Few as "nominal" is unconvincing; $100 per week is meaningful compensation for Crystal Few's services. "[T]he addition of a profit motive to an activity makes

it a business pursuit." Wiley v. Travelers Ins. Co., 534 P.2d 1293, 1295 (Okla. 1974). While caring for children could, under some circumstances, not be a business, charging money for regularly caring for another's children involves a profit motive. It is clear that Crystal Few was engaged in something more than merely caring for her own children and occasionally her friends' or neighbors' children on an informal basis. Cf. id. ("the case at bar was not the family pet litter sale. It was something more").

The Haddocks contend that the Policy's business exclusion is ambiguous and, thus, should be construed against ACIC. Dkt. # 24, at 6. "A contract term is ambiguous if it can be interpreted as having two different meanings." City of Jenks, 184 P.3d at 544. The fact that it may be difficult, in a particular case, to determine whether an activity falls within an exclusion does not render that exclusion ambiguous. The term "business" cannot be interpreted as having two different meanings in this case. Thus, the term is not ambiguous.

Further, the Policy expressly provides, in the definition of "business," that "'Business' includes services regularly provided by an 'insured' for the care of others and for which an 'insured' is compensated." Dkt. # 15-2, at 6. Crystal Few was regularly providing services for the care of others, and was compensated for such services. Her home daycare is clearly a "business" under the Policy.

The Haddocks contend that caring for others' children along with one's own is "not usually viewed as 'business' in nature." The Oklahoma courts have not spoken on this issue. There is a split of authority among other jurisdictions regarding whether caring for others' children along with one's own falls under the generally non-business activities exception to the business activities exclusion.

Courts finding that no coverage exists for children's injuries sustained at in-home daycares have focused on the fact that the child was at the home because of the daycare business, and the fact that the alleged tortfeasor owed a duty to the child because of the daycare business. See Standard Mut. Ins. Co. v. Chastain, 21 Fed. App'x 499 (7th Cir. 2001) (Ind. law); Elorza v. Massey, 783 So.2d 453 (La. Ct. App. 2001); Dwello v. Am. Reliance Ins. Co., 990 P.2d 190 (Nev. 1999); Allstate Ins. Co. v. Mathis, 706 N.E.2d 893 (Ill. Ct. App. 1999). According to this line of reasoning, the victim child would not have been at the home, nor would the child have a tort claim, if it were not for the existence of the daycare business. Courts have also focused on the actual cause of the injury, and determined that claims arising out of a daycare provider's negligent supervision were not covered, but claims based on breach of duties unrelated to the daycare were covered. See Vandenberg v. Cont'l Ins. Co., 628 N.W.2d 876 (Wis. 2001) (finding that there would be no coverage if the claim were for negligent supervision); Lamb v. Security Mut. Ins. Co., 719 N.Y.S.2d 409 (N.Y. App. Div. 2000) (finding no coverage for negligent supervision claim, but finding coverage for strict liability claim relating to dog bite); Am. Family Mut. Ins. Co. v. Bramlett ex rel. Bramlett, 31 S.W.3d 1 (Mo. Ct. App. 2000) (finding coverage because child was injured by daycare provider's husband's operation of lawnmower, not provider's negligent supervision).

Other courts, however, have found that caring for children (particularly alongside one's own children) is an activity ordinarily incident to nonbusiness pursuits. See Crane v. State Farm Fire & Cas. Co., 485 P.2d 1129 (Cal. 1971); Western Fire Ins. Co. v. Goodall, 658 S.W.2d 32 (Mo. Ct. App. 1983). This line of reasoning is foreclosed by the Oklahoma Supreme Court's decision in Wiley, 534 P.2d 1293. In that case, Rose Wiley had been attacked by one of the homeowner's dogs while she was at the insured's residence in response to a classified advertisement and to purchase a puppy.

Id. at 1294. The homeowner's insurance policy stated that coverage did not apply "to bodily injury or property damage arising out of business pursuits of an Insured except activities therein which are ordinarily incident to non-business pursuits . . . ." Id. The Wiley court was primarily concerned with whether the homeowner's dog-related activities were a business, and held that they were, despite the fact that the homeowner had a different full-time occupation. The dissent argued, like the Haddocks, that there was no way to distinguish Wiley's being bitten by a dog from a dog attack on a casual or social visitor to a home. Id. at 1298 (Barnes, J., dissenting). Therefore, the dissent argued, Wiley's injuries were caused by an activity of "the type ordinarily incident to a non-business pursuit." Id. The majority opinion was contrary to this view.

In Maryland Casualty Co. v. Farmers Alliance Mutual Insurance Co., 566 P.2d 168 (Okla. 1977), the Oklahoma Supreme Court considered whether a business pursuits exception applied to damage caused by a carpenter lighting a cigarette where gas was leaking. The carpenter's insurance policy did not apply "to any business pursuits of an Insured, except . . . activities [ ] which are ordinarily incident to nonbusiness pursuits . . . ." Id. at 169. The court determined that the exclusion applied because the carpenter was engaged in a "business pursuit," i.e., carpentry, when the accident occurred. Id. The Maryland Casualty court rejected the argument that the exclusion was inapplicable because smoking was not part of carpentry. Id. at 170. The court implicitly rejected the argument that smoking was an activity ordinarily incident to nonbusiness pursuits, stating "[w]orkmen are not employed to smoke, any more than chauffeurs are employed to drive their cars on sidewalks. Smoking is a pastime of the employee, but one which employers know is a common habit of workmen." Id. Thus, the fact that people smoke cigarettes whether or not they are engaged

11

in business pursuits did not take the accident outside of the business pursuits exclusion in Maryland Casualty.

Based on Wiley and Maryland Casualty, the Court determines that Oklahoma courts would not view injuries sustained by a child at in-home daycare as injuries from activities "usually not viewed as 'business' in nature." W.H. was at the Few residence because of Crystal Few's daycare business. Crystal Few was caring for W.H. because of that business. The Haddocks' petition alleges that Crystal Few owed W.H. a duty of care "as a provider of childcare." Dkt. # 15-3, at 1. The Haddocks' claims are for injuries resulting from activities related to the business of the insured. Therefore, the Policy provides no coverage for those claims.

Further, even if the business activities exclusion did not apply in this case, the exclusion from medical payments coverage for "a person who is on the 'insured premises' because a 'business' is conducted . . . on the 'insured premises,'" Dkt. # 15-2, at 20, would apply. W.H. was on the Fews' property because of Crystal Few's daycare business. The Haddocks' claim is for medical payments for W.H.'s injuries and, therefore, is not covered.

**IT IS THEREFORE ORDERED** that American Insurance Company's Motion for Summary Judgment and Brief in Support (Dkt. # 15) is **granted**.

**IT IS FURTHER ORDERED** that the Haddocks' counter-motion for summary judgment (Dkt. # 24) is **denied**.

**DATED** this 24th day of June, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT